

In the United States Court of Federal Claims

No. 20-1732
(Filed: December 14, 2023)

```
*****************************
LESLIE J. CONTI,              *
                              *
              Plaintiff,      *
                              *
      v.                      *
                              *
THE UNITED STATES,            *
                              *
              Defendant.      *
*****************************
```

*Brian D. Schenk*, Midwest Military & Veterans Law, PLLC, Minneapolis, MN, counsel for Plaintiff.

*Daniel A. Hoffman*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Scott Medlyn, Maj, USAF*, AF/JAC Military Personnel Law and Litigation, Joint Base Andrews-Naval Air Facility, MD, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

    Retired technical sergeant Leslie J. Conti ("Conti") claims she is entitled to back pay under the Military Pay Act, 37 U.S.C. § 204, because the Air Force committed procedural violations that affected her promotion eligibility. Conti alleges that the Air Force Board for Correction of Military Records ("AFBCMR") acted arbitrarily in failing to find that the procedural violations committed by her unit command precluded her promotion to master sergeant. Before the Court are the government's motion to dismiss and the parties' cross-motions for judgment on the administrative record. Because the Court finds that Conti's claims present nonjusticiable issues, the government's motion to dismiss is **GRANTED**, and the parties' cross-motions for judgment on the administrative record are **DENIED AS MOOT**.

### I. BACKGROUND

    Conti began her military career in 1980 by enlisting with the regular component of the United States Air Force, where she served four years on active duty. AR 224.[1] In 1991, Conti enlisted in the Ohio Air National Guard ("ANG") and as a Reserve in the Air Force, where she served three years. AR 247. On July 15, 2004, Conti reenlisted in the ANG and as a Reserve in the Air Force, this time with the Texas ANG for a term of six years. AR 241, 449-50. On May 2,

---
[1] The Court cites to the Administrative Record filed by the government at [ECF 32] as "AR ___."

2005, Conti entered the Active Duty for Special Work program (later called the Active Duty for Operational Support ("ADOS")) as a staff sergeant, at the E-5 grade. Am. Compl. [ECF 31] ¶ 22; *see* AR 211. Between May 2, 2005, and her retirement on May 28, 2018, Conti participated in the ADOS and served as part of the 149th Flight Wing in San Antonio, Texas ("unit" or "command") in support of the Texas National Guard Joint Counterdrug Task Force. [ECF 31] ¶ 23; *see* AR 431. On March 1, 2018, Conti filed a complaint with the 149th Flight Wing Inspector General ("IG"), alleging that her command's personnel decisions violated applicable Air Force instructions governing assignments, overgrade status, and career progression. [ECF 31] ¶ 45; AR 103. Conti retired a few months later, on May 28, 2018, at the E-6 grade. AR 46.

### A.   Instructions on Assignments, Overgrade Status, and Career Progression

The ANG places service members into duty positions represented by codes comprised of numbers and letters. *See* [ECF 34-2] at 38 (Air National Guard Instruction ("ANGI") 36-2101).[2] These are referred to as Air Force Specialty Codes ("AFSC") and used to identify groups of positions in which members are placed based on skill level and qualifications. *Id*. Members may hold multiple AFSCs, with their duty AFSC identifying a position based on the Unit Manpower Document ("UMD"). *See* AFI 36-2406, *Officer and Enlisted Evaluation System*, para. 1.4.8. The UMD lists all authorized personnel assignments within an individual ANG unit. *See* [ECF 34-2] at 38. Each UMD position carries an authorized grade representing the highest grade that can be held by the member holding the position. *Id.* When a member's grade is greater than their UMD position's authorized grade, they are in "overgrade" status. *Id.* at 39.

ANGI 36-2101 provides steps that a commander and a member in overgrade status must take to resolve the condition. *See* [ECF 34-2] at 14 (ANGI 36-2101, *Assignment to Excess or Overgrade*, para. 2.18). Pursuant to this instruction, "the member will be counseled by their commander as to the reason why the condition occurred, the overgrade . . . code, effective date, expiration date and what could happen as a result of this assignment." *Id.* at 14 (ANGI 36-2101, para. 2.18.1). The commander and member must sign a Statement of Understanding form, and a copy of the form must be provided to the servicing Force Support Squadron ("FSS"). *Id.* (ANGI 36-2101, para. 2.18.2.2). The FSS will provide a list of members in overgrade status. *Id.* at 14-15 (ANGI 36-2101, para. 2.18.4). Commanders shall use this list for force management decisions regarding overgrade assignments and return the list to the FSS with a viable plan for resolution. *Id*. "Any member assigned in an excess or overgrade status must be reassigned to the first available position commensurate with their grade and for which they are qualified." *Id.* at 14 (ANGI 36-2101, para. 2.18.11). Enlisted personnel below the grade of colonel who have been placed in overgrade status "may be retained for 24 months," *id.* at 25 (ANGI 36-2101, para.

---

[2] The Court cites to ANGI 36-2101, *Assignment Instructions and Programs* (Apr. 10, 2012) attached as Exhibit B to the government's motion to dismiss and cross-motion for judgment on the administrative record, as [ECF 34-2] at __ (ANGI 36-2101). ANGI 36-2101 "describes the responsibilities and provides authority, guidance, and procedures for establishing and conducting Assignment within the ANG officer and enlisted members." An earlier version of ANGI 36-2101 was in effect briefly during TSgt (RET) Conti's service and the follow-on instruction, AFI 36-2110, became effective after she retired. There are no significant differences between the versions and the parties' briefs both cite to ANGI 36-2101.

4.2.1), and are ineligible for promotion, *see* [ECF 34-3] at 10 (ANGI 36-2502).[3] "It is incumbent on the unit commander to keep members informed of their status and to continually work with the member to rectify the excess or overgrade condition." [ECF 34-2] at 14 (ANGI 36-210, para 2.18.2.2).

Department of Defense Directive ("DoDD") 1304.20, *Enlisted Personnel Management System (EPMS),* para. 1.2.3 (July 28, 2005) sets forth the policies, responsibilities, objectives, and requirements for a military service Enlisted Personnel Management Plan (EPMS). *See* AR 285. One goal of the EPMS is to "[p]rovide visible, relatively stable career progression opportunities over the long term." AR 286 (DoDD 1304.20, para 4.2.2). Air Force Policy Directive ("AFPD") 36-25 implements DoDD 1304.20 and reiterates that the "promotion system will provide a visible, relatively stable career progression." AR 287-88. AFPD 36-25 states that the regular Air Force and Air Reserve components will "[s]elect Airmen for promotion based on potential to serve in the next higher grade. Selections will be made using the fully qualified or best qualified concept, which values duty performance and potential based on that performance, but not to the exclusion of other factors." AR 288 (AFPD 36-25, para. 3.1).

Air Force Instruction ("AFI") 36-2502 implements AFPD 36-25. AR 289. It provides that commanders will "ensure their personnel meet all promotion criteria as outlined in this instruction prior to promotion" and "execute a well-conceived, viable personnel force management to equally distribute the progressive development and upward mobility of their assigned personnel." AR 290 (AFI 36-2502, paras. 10.1.11.2 and 10.1.11.3). It further states:

> [t]he authority to approve promotions . . . is [The Adjutant General ("TAG")]. TAG may delegate authority to promote airmen in these grades to the [Assistant Adjutant General ("AAG")] for Air. However, the AAG for Air will not further delegate this authority. There will be no exceptions to this policy.

[ECF 34-3] at 5 (ANGI 36-2502, *Who May Promote Airmen*, para. 1.2.2); [ECF 34-4] at 98 (AFI 36-2502, *Authority*, para. 10.1.3.1).[4]

### B.   Conti's Overgrade Status

As of September 28, 2011, Conti was with the ANG 149th Civil Engineering Squadron ("149th"), and fully qualified for two 7-level AFSCs: 3D071 (knowledge operations) and 3A171 (administration). AR 154, 158. In January 2012, Conti was filling the 3D071 position when, due to enlisted grade restructuring and changes in the UMD, the authorized grade for her duty position was downgraded from E-6 to E-5. [ECF 31] at ¶ 28; *see* AR 8, 109. As a result, Conti

---

[3] The Court cites to ANGI 36-2502, *Promotion of Airmen* (June 17, 2012) attached as Exhibit C to the government's motion, as [ECF 34-3] at __ (ANGI 36-2502) and AFI 36-2502, *Enlisted Airman Promotion/Demotion Programs* (Dec. 12, 2014) attached as Exhibit D to the government's motion, as [ECF 34-4] at __ (AFI 36-2502). AFI 36-2502 supersedes ANGI 36-2502. For purposes of this case, there are no substantive differences between the cited Promotion Instructions, and they may be used interchangeably.

[4] The Court cites to AFI 36-2502, attached as Exhibit D to the government's motion, as [ECF 34-4] at __ (AFI 36-2502).

was filling a position below her E-6 grade, causing her to be in overgrade status. *See* [ECF 34-2] at 37 (ANGI 36-2101).

On February 29, 2012, Conti and her commander signed a Statement of Understanding, effective January 2, 2012, through December 31, 2014, providing 36 months of retainability.[5] AR 157. The Statement of Understanding provided:

> I understand that prior to my expiration date of the OVERGRADE condition, my unit and I share the responsibility to locate and place me in a vacant position (with the AFSC for which I am currently qualified) which is commensurate with my grade. If a valid position is not available by my expiration date, I further understand that: 1) I must be reassigned for retraining purposes to another vacant position commensurate with my grade or, 2) My unit commander may request an extension to my expiration date, or 3) I will be administratively demoted to the authorized grade of my current position or, 4) I will be involuntarily separated from the [ANG].

*Id*. At the end of December 2013, twenty-four months from the date Conti's position became overgrade, Conti was undergoing a Medical Evaluation Board ("MEB") review.[6] *See* AR 112. 157. Her involvement in the MEB made her promotion ineligible. *See* [ECF 34-3] at 6 (ANGI 36-2502); [ECF 34-4] at 104 (AFI 36-2502). The MEB found her fit for duty on January 21, 2014. AR 112.

Between May 20, 2014, and October 1, 2014, Conti's AFSC was converted to 3S011 (Personnel), which triggered a requirement that Conti attend training. AR 115. She was unable to complete the training because of duty-limiting medical conditions. AR 163. Following the expiration of her first Statement of Understanding, Conti and her commander signed a second Statement of Understanding on July 12, 2015. AR 162. It was effective October 1, 2014, through June 10, 2016, the date of Conti's Expiration of Term of Service. AR 162-63. On March 8, 2016, the 149th commander requested an exception to extend Conti's Expiration of Term of Service by 14 months. AR 163. In April 2018, Conti's MEB review found her physically unfit for continued duty and the Secretary of the Air Force directed that she be retired with a 40% permanent disability rating. AR 469, 473-74. Conti retired on May 28, 2018, at the E-6 grade. AR 46.

C. **Inspector General Complaint**

As noted above, on March 1, 2018, Conti filed a complaint with the 149th Flight Wing Inspector General ("IG") alleging that her command violated ANGI 36-2101, para. 2.18.11, by

---

[5] It is unclear why the Statement of Understanding provided 36 months of retainability considering that ANGI 36-2101, para. 4.2.1 provides that enlisted personnel below the grade of colonel may be retained for only 24 months.

[6] Conti entered the Integrated Disability Evaluation Systems ("IDES")/MEB process in November 2012. AR 105, 110. An Airman is not eligible for promotion if he/she is pending an MEB determination. *See* [ECF 34-3] at 6 (ANGI 36-2502). From November 2012 until May 2018 when she retired, TSgt (RET) Conti was involved in four separate DES processes during which she was promotion ineligible due to the involvement. *See* AR 105, 110-13, 118-21, and 128-29.

failing to resolve her overgrade condition and reassign her to the first available position commensurate with her grade and for which she was qualified. AR 31-32, 104. Lt. Col. Miller, who served as Conti's previous unit commander and signed her first Statement of Understanding, dismissed Conti's complaint on April 10, 2018. AR 167. Lt. Col. Miller stated that the complaint was dismissed in accordance with AFI 90-301, which instructs that a complaint shall be dismissed "[i]f the complaint analysis reveals the complainant has not brought forth credible evidence of a violation of law, instruction, regulation, or policy." AR 167-68 (citing AFI 90-301, *Inspector General Complaint Resolution*, para. 3.26 and Table 3.13, Rule 1); [ECF 34-7] at 65 (AFI 90-301).[7] Lt. Col. Miller then advised Conti of her right to petition the AFBCMR for correction of any adverse personnel decisions. AR 167.

### D. First AFBCMR Review

Conti filed an Application for Correction of Military Record with the AFBCMR on October 13, 2018, arguing that her unit command violated ANGI 36-2101, paragraphs 2.7 and 2.18.11, and made her ineligible for promotion by failing to reassign her to the first available position commensurate with her E-6 grade, and by failing to make every effort to ensure that assignments for retraining would not result in an overgrade condition. AR 154. Conti provided the AFBCMR with a list of UMD assignments to which she contends she should have been reassigned. AR 154, 171-76. Further, she requested "a grade/rank adjustment to E-7/MSgt effective 1 Dec 2015 and [] appropriate back-pay." *Id.*

The AFBCMR requested an advisory opinion from the National Guard Bureau Force Management Branch ("NGB/A1PP"), and Conti subsequently provided her comment on the advisory opinion. *See* AR 279-83. On November 21, 2019, the AFBCMR denied Conti's application, stating the following:

> The Board concurs with the rationale and recommendation of NGB/A1PP and finds a preponderance of the evidence does not substantiate the applicant's contentions. Documentation revealed the applicant was unable to meet the retraining approval requirements and concurred with over grade conditions on two separate occasions over a 4-year period. Additionally, the Board notes the 149 FW/IG's dismissal of the applicant's request to redress her over-grade status and promotion to E-7, finding no credible evidence of violation of law[,] instruction, regulation, or policy. Therefore, in the absence of evidence to the contrary, the Board recommends against correcting the applicant's records.

AR 152.

---

[7] The Court cites to AFI 90-301, attached as Exhibit G to the government's motion, as [ECF 34-7] at __ (AFI 90-301).

### E.     Litigation and Second AFBCMR Review

Conti filed a complaint with this Court on December 2, 2020. Compl. [ECF 1]. After discovering that the advisory opinion relied upon by the AFBCMR was unlawful under AFI 36-2603,[8] the government filed a motion for voluntary remand. *See* [ECF 20]. On August 31, 2021, the Court granted the motion for remand. *See* [ECF 21]. On remand, Conti provided additional evidence and requested "that the AFBCMR correct her records to reflect (a) promotion to E-7 with an effective date of March 3, 2014; and (b) an adjusted retired grade of E-7 effective on the date of her retirement." AR 94. She also requested "all pay, allowances, compensation, emoluments, or other pecuniary benefits to which she is entitled as a result of any records corrections." AR 94-95.

The AFBCMR subsequently requested an advisory opinion from the NGB/A1PP. AR 300-02. In its opinion, the NGB/A1PP acknowledged that Conti was kept in overgrade condition beyond 24 months, that there were positions available which would have resolved her overgrade condition, and that there was no evidence that there was a force management plan in place or that Conti was provided career progression. AR 300-01. Nevertheless, they concluded that:

> Based on the documentation provided by the applicant and analysis of the facts, there **IS** evidence of an injustice. The Inspector General did not address the applicant's complaint of being kept in an overgrade status for over 48 months . . . . Although [] Conti should not have been in an overgrade status for an extended period of time, there is no guarantee the TAG would have promoted the member had she been in a valid position.

AR 301 (emphasis in original). On February 1, 2022, Conti responded to the advisory opinion stating: "The lack of promotion consideration by the TAG is an error and injustice itself because, due to procedural errors related to her command's obligation to resolve her overgrade status and ensure her career progression, she did not meet promotion-eligibility requirements she otherwise would have met." AR 318.

The AFBCMR convened on February 28, 2022, and completed its Addendum to Record of Proceedings on March 11, 2022. AR 4-12. It concluded that Conti's unit committed procedural violations by allowing Conti to remain in overgrade condition beyond 24 months, by failing to reassign Conti to the first available position commensurate with her grade and for which she was qualified, and by failing to have a force management plan in place and to make an effort to resolve the overgrade condition. AR 10-11. It also found procedural violations stemming from her unit's failure to provide the Statement of Understanding to the FSS, the FSS's failure to provide a quarterly list of overgrade members, and the commander's failure to use the list to create and return to the FSS a viable plan for resolution. AR 11. The AFBCMR stated that Conti's promotion ineligibility "was to a certain extent, the result of error or oversight

---

[8] AFI 36-2603, AFBCMR, para. 4.2.2.4 (Sept. 18, 2017) provides: "If the matter before the Board pertains to . . . promotion issues . . . the opinion must be signed by at least a colonel (O-6) or GS-15 within the organization providing the advisory." The NGB Advisory Opinion was signed by a master sergeant (E-7). AR 279.

on the part of the unit, creating an injustice upon the applicant by impairing her ability to advance in her career." *Id.* However, it concluded as follows:

> [T]he unit's responsibility to correct the applicant's overgrade condition by reassigning her to a position commensurate with her grade and for which she was qualified would have been met by placing her in a technical sergeant (E-6) billet, as acknowledged by counsel's statement that placement in a master sergeant (E-7) authorized position was possible, if not mandatory. This would have corrected the overgrade condition, but the applicant would still not have been eligible for promotion to the rank and grade of master sergeant (E-7), in accordance with AFI 36-2502, which requires the applicant to be assigned to a valid UMD position with an authorized grade greater than or equal to the grade for which she is being recommended. Therefore, the Board concurs with the advisory opinion and rationale of NGB/A1PP and finds a preponderance of the evidence does not substantiate the applicant's position with regard to her promotion to the rank and grade of master sergeant (E-7), finding her contention that correction of her overgrade condition would have resulted in her promotion to be wholly speculative.

AR 11-12. The AFBCMR further concluded that that "authority to approve promotion of a drill status guardsman to the rank and grade of master sergeant (E-7), lies within the discretion of the state Adjutant General" which "plac[es] the applicant's relief outside this Board's authority." AR 12. Therefore, it further recommended against granting Conti record-corrections relief on this basis. *Id.*

On May 31, 2022, Conti filed an amended complaint, alleging that the AFBCMR has authority to grant her requested relief and seeking promotion related backpay and retired pay. [ECF 31]. Conti filed a motion for judgment on the administrative record in this Court on August 1, 2022. [ECF 33]. The government filed a motion to dismiss Conti's complaint and cross-motion for judgment on the administrative record on August 31, 2022. [ECF 34]. The motions are fully briefed, *see* [ECFs 35, 38], and the Court held oral argument on June 6, 2023, *see* [ECF 39].

## II.   STANDARDS OF REVIEW

Motions to dismiss for lack of subject matter jurisdiction are governed by RCFC 12(b)(1). When considering a motion to dismiss under RCFC 12(b)(1), "this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor." *Cal. Dep't of Water Res. v. United States*, 128 Fed. Cl. 603, 609 (2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). When the government moves to dismiss the complaint under RCFC 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021). "Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Sandstone Assocs., Inc. v. United States*, 146 Fed. Cl. 109, 112

(2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). Thus, if the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

"Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr,* 369 U.S. 186, 198 (1962)). The question of whether a claim is justiciable is analyzed under RCFC 12(b)(6) for failure to state a claim. *See e.g., Antonellis v. United States*, 106 Fed. Cl. 112, 115 (2012), *aff'd*, 723 F.3d 1328 (Fed. Cir. 2013); *Miller v. United States*, 119 Fed. Cl. 717, 724–25 (2015*); Guardado v. United States*, No. 22-33C, 2023 WL 5426590, at *1 (Fed. Cl. Aug. 23, 2023).

On a motion to dismiss under RCFC 12(b)(6), the Court must accept as true a complaint's well-pleaded factual allegations and construe them in the manner most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). All reasonable inferences must be drawn in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Dismissal "for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "Where a claim is nonjusticiable, the appropriate action is for a court to dismiss the claim for failure to state a claim." *Antonellis*, 106 Fed. Cl. at 113.

## III. DISCUSSION

Conti argues that the AFBCMR erroneously determined that it did not have the authority to grant the requested records correction relief, arbitrarily and capriciously failed to find that her command's procedural violations precluded her promotion to E-7, and failed to correct an injustice clearly presented to it. [ECF 33] at 30-37.[9] The government moves to dismiss Conti's complaint, arguing that the Court lacks jurisdiction and that her claims are nonjusticiable. [ECF 34] at 33-34. The government also cross-moves for judgment on the administrative record. *Id.* at 44. As explained below, the Court finds that Conti's claims are nonjusticiable and that, therefore, her complaint must be dismissed for failure to state a claim pursuant to RCFC 12(b)(6).[10]

---

[9] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

[10] Because the Court determines that Conti's claims are nonjusticiable and that her complaint must be dismissed under RCFC 12(b)(6), it need not consider whether the AFBCMR has the authority to grant the requested records correction relief or whether its determinations on the merits lack a rational basis.

### A. The Court has Jurisdiction Over Conti's Complaint

The government argues that Conti's complaint must be dismissed for lack of jurisdiction because she fails to identify a money-mandating statute for her foundational claim that her unit failed to reassign her. [ECF 34] at 34-35. It contends that, while the Military Pay Act can be money-mandating, it is not in this case because the Military Pay Act only provides a service member the "'basic pay of the pay grade to which assigned or distributed, in accordance with their years of service'" and "Conti does not contend [] that she was not paid according to her pay grade – or even that if the ANG assigned her to a non-overgrade position, she would have been paid more." *Id.* at 34-35.

The Tucker Act confers upon this Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "merely a jurisdictional statute and does not create a substantive cause of action." *Rick's Mushrooms Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). To establish this Court's jurisdiction under the Tucker Act, a plaintiff must identify "a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).

Conti, as a member of the Air Force Reserve, alleges that she is entitled to monetary relief—back pay—under the Military Pay Act.[11] *See* [ECF 31] ¶ 3. This is sufficient to establish jurisdiction. *See Antonellis,* 106 Fed. Cl. at 114-15 ("To establish jurisdiction, Plaintiff must allege that [s]he is entitled to money damages under a money-mandating source of law and that [s]he is within the class of plaintiffs entitled to relief."). It is well established that the Military Pay Act is a money-mandating statute. *See e.g., Metz v. United States*, 466 F.3d 991, 997-98 (Fed. Cir. 2006); *Smith v. Sec'y of Army*, 384 F.3d 1288, 1293 (Fed. Cir. 2004); *see also Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (stating that the Federal Circuit has "long recognized that the Military Pay Act 'provides for suit in [the Claims Court] when the military, in violation of the Constitution, a statute, or regulation, has denied military pay.'") (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) (alteration in *Antonellis*)).

While the government contends that Conti must demonstrate entitlement to backpay under the Military Pay Act for it to serve as a money-mandating statute, this type of two-step jurisdictional analysis was expressly rejected by the court in *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005). In *Fisher*, the Federal Circuit explained that "the single step would be one in which the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy." *Id.* at 1173. "In determining its

---

[11] Conti also relies on 10 U.S.C. § 1201 (disability retired pay), 10 U.S.C. §§ 12732, 12733 (retired pay for non-regular service), and 10 U.S.C. § 1414 (concurrent disability retired pay and Veterans Affairs disability compensation). [ECF 31] ¶ 3. Because the Court concludes that Conti's reliance on the Military Pay Act is sufficient to establish jurisdiction, it need not consider whether these other provisions are also money-mandating.

9

jurisdiction over a suit, the money-mandating nature of a statute is determined by this court, at the outset, without regard as to whether a particular set of facts justifies compensation under the statute." *Miller*, 119 Fed. Cl. at 729 (citing *Fisher,* 402 F.3d at 1173). Because the Military Pay Act is a money-mandating statute, the Court has jurisdiction over Conti's claims.

### B. Conti's Claims Are Nonjusticiable

The government also argues that Conti's complaint should be dismissed for failure to state a claim upon which relief can be granted because her claims are nonjusticiable. [ECF 34] at 36-38. It contends that Conti's claim that her command failed to reassign her and resolve her overgrade condition is nonjusticiable because assignments are professional military judgments and "the reassignment instruction does not provide a workable test or standard by which to judge the 149th's conduct." *Id.* The government further argues that "the Court need not address the promotion process because [] Conti was not within it" and "even if she were . . . [her allegations] do not rise to the 'clear cut' exception required for promotion justiciability." *Id.* at 40. Conti counters that her claims are justiciable because "they state facially plausible procedural violations in the AFBCMR's decisionmaking and the underlying conduct of [] Conti's command on review before the Board." [ECF 35] at 21. She further asserts that, because her claims "are firmly rooted in allegations of procedural error . . . she need not establish a clear-cut legal entitlement to a promotion," but that, in any event, "her case meets the standard." *Id.* at 27. The Court finds that Conti's claims are nonjusticiable because she fails to identify a procedure that the Air Force violated by not promoting her and because she fails to establish a clear-cut entitlement to a promotion.

Conti alleges that "[t]he Air Force violated procedures by failing to resolve her overgrade condition within 24 months and reassigning her to a position for which she was qualified and in accordance with a management plan that provides the optimum career progression and promotion opportunity while keeping personnel in excess and overgrade status to a minimum." [ECF 35] at 23 (citing Am. Compl.). The Court is not persuaded by the government's argument that these instructions fail to provide a workable standard by which to judge the 149th's conduct regarding Conti's reassignment. They required that Conti's command take specific steps to resolve her overgrade status, such as requiring her commander to work with the FSS to identify available positions and to reassign her to the first available position commensurate with her grade level and for which she was qualified. *See* [ECF 34-2] (ANGI 36-2101).

However, Conti does not challenge the AFBCMR's determination that her unit violated certain assignment instructions. Rather, she challenges the AFBCMR's decision not to promote her given these violations. To be sure, the AFBCMR determined that Conti's unit failed to comply with Air Force instructions requiring resolution of her overgrade status and that such non-compliance "creat[ed] an injustice upon [Conti] by impairing her ability to advance in her career." AR 11. Nevertheless, the AFBCMR concluded that Conti's requested relief—correction of her records to reflect promotion to the rank and grade of master sergeant (E-7)—was not warranted because the remedy for her unit's procedural violations required only that she be reassigned to a technical sergeant (E-6) position, not placement in an E-7 position or eventual promotion. AR 11-12. In the face of this decision, Conti asks this Court to find arbitrary "[t]he AFBCMR's failure to provide full and effective relief considering her unit's clear violations of

regulation that precluded her promotion eligibility and promotion to E-7" and to "[d]irect the AFBCMR to correct [her] records to reflect that she was promoted to E-7 at the earliest possible date[.]" [ECF 31] at 24-25. In essence, her claim is that the AFBCMR failed to promote her in light of her unit's apparent violations.

While prior decisions of the Federal Circuit and its predecessor "do not always present a clear picture of the remedies available to a service member challenging a decision concerning promotion . . . several principles can be distilled from those cases." *Antonellis*, 723 F.3d at 1332. As relevant here, the *Antonellis* court explained:

> First, civilian courts are reluctant to second-guess decisions of the military authorities as to promotion, separation, or reassignment. We have emphasized that "the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States,* 988 F.2d 1199, 1204 (Fed. Cir. 1993); *see also Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S. Ct. 534, 97 L. Ed. 842 (1953) ("[J]udges are not given the task of running the Army."). We have also noted that there are "thousands of . . . routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." *Voge v. United States,* 844 F.2d 776, 780 (Fed. Cir. 1988). In particular, we have emphasized that "[a] court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit." *Sargisson v. United States,* 913 F.2d 918, 922 (Fed. Cir. 1990).
>
> Second, if a statute, regulation, or instruction specifies the particular procedure to be followed in personnel actions, and the plaintiff alleges that the required procedure was not followed, a judicial remedy may be available. When the military promulgates procedural regulations and instructions and makes them the basis for a personnel action, that action is "subject to judicial review for compliance with those regulations and instructions." *Sargisson,* 913 F.2d at 921. When a party asserts that the military violated a specific procedure mandated by statute or regulation, "the test[s] or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations." *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed. Cir. 1995) (citing *Murphy v. United States,* 993 F.2d 871, 873 (Fed. Cir. 1993)).
>
> * * *
>
> Third . . . a back pay remedy under the Military Pay Act is available under some circumstances, based on a finding of procedural violations. To be sure, back pay is not always available. For example, in the promotions context we have noted that "the Military

11

> Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected." *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004). This is so because, generally, "a service member is entitled only to the salary of the rank to which he is appointed and in which he serve[d]." *Id*. However, we have also recognized circumstances in which back pay is available. One such exception arises when the plaintiff "has satisfied all the legal requirements for promotion, but the military has refused to recognize his status." *Id*. (citing *Skinner* [*v. United States*, 594 F.2d 824, 830 (1979)]).
>
> * * *
>
> Finally, a remedy is available only if the statute, regulation, or instruction provides justiciable standards.

723 F.3d at 1332-34. Therefore, for Conti's claims to be justiciable, she must identify an instruction that the Air Force violated by failing to promote her (and that provides a justiciable standard) or she must demonstrate that she has satisfied all the legal requirements for promotion but that the military has refused to recognize her status, *i.e.*, a clear-cut entitlement to promotion. *See Hale v. United States*, 497 F. App'x 43, 46 (Fed. Cir. 2012) (characterizing a plaintiff's showing that she was wrongly denied a promotion as requiring a demonstration of "a clear-cut legal entitlement to the promotion in question, i.e., that she 'has satisfied all the legal requirements for promotion, but the military has refused to recognize [her] status.'") (quoting *Smith*, 384 F.3d at 1294) (alteration in *Hale*).

Here, none of the instructions Conti identifies provide a justiciable standard by which this Court can assess whether the Air Force erred by not promoting her. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge,* 844 F.2d at 780 (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C. Cir. 1958)), *rev'd on other grounds,* 360 U.S. 474 (1959)). ANGI 36-2101, the instruction governing assignments, requires, among other things, that a member in overgrade status be "counseled by their commander," sign a Statement of Understanding, and "be reassigned to the first available position commensurate with their grade and for which they are qualified." It does not speak to the promotion process. DoDD 1304.20, *Enlisted Personnel Management System (EPMS)*, states that one goal of a member's personnel plan is to "[p]rovide visible, relatively stable career progression opportunities over the long term." AFPD 36-25 reiterates that the "promotion system will provide a visible, relatively stable career progression[.]" It further provides that the Air Force will "[s]elect Airmen for promotion based on potential to serve in the next higher grade" and that "[s]elections will be made using the fully qualified or best qualified concept, which values duty performance and potential based on that performance, but not to the exclusion of other factors." AR 288 (AFPD 36-25, para. 3.1). Finally, AFI 36-2502 states that commanders will "ensure their personnel meet all promotion criteria as outlined in this instruction prior to promotion" and "execute a well-conceived, viable personnel force management to equally distribute the progressive development and upward mobility of their assigned personnel."

While these instructions outline the goals of the promotion system generally, they do not provide an objective, discernable regulatory standard that the Air Force was required to follow in deciding whether to promote Conti. *See Antonellis*, 723 F.3d at 1332 ("[A] remedy is available only if the statute, regulation, or instruction provides justiciable standards."); *see also King v. United States,* 50 Fed. Cl. 701, 710 (2001) (finding the plaintiff's reliance on Air Force Regulation 36–20 "unavailing" because the regulation "furnishe[d] no judicially enforceable standards"); *Sargisson,* 913 F.2d at 921-22 (finding that "the Secretary's compliance with AFR 36–12 ¶ 71 and the Letter of Instructions [wa]s . . . nonjusticiable," reasoning that "[n]either AFR 36–12 ¶ 71 nor the Letter of Instructions gave any 'tests or standards' by which the Claims Court could determine whether the decision to release Sargisson from active duty was correct"). As such, Conti has identified no instruction which provides a justiciable standard for this Court to determine whether the Air Force violated it its own procedures in failing to promote her. *See Antonellis,* 723 F.3d at 1335 ("Even if [plaintiff's] complaint could be read as alleging a procedural violation, as the Claims Court observed, the Commander's guidance letter 'lists the factors the Board should consider [in making billet assignments], but it does not specify the weight to be given to each factor.'") (quoting *Antonellis*, 106 Fed. Cl. at 116) (alteration in Federal Circuit decision). Because it is well established that the Court will not review a promotion claim in the absence of such an instruction, Conti's claims are not justiciable. *See Sargisson,* 913 F.2d at 922 (stating that "[a] court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit"); *Lindsay*, 295 F.3d at 1257 ("Neither the Court of Federal Claims nor the Court of Appeals for the Federal Circuit will review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service."); *see also id.* at 1258 ("Because the AFBCMR's decision required an evaluation of [plaintiff's] promotability, we held that the lack of an applicable statutory or regulatory standard to gauge the AFBCMR's promotability decision precluded judicial review of that decision.") (citing *Fluellen v. United States,* 225 F.3d 1298, 1304 (Fed. Cir. 2000)).

Conti's argument that she meets the clear-cut entitlement exception is similarly unavailing. As noted above, a plaintiff has a clear-cut entitlement to promotion where she "has satisfied all the legal requirements for promotion, but the military has refused to recognize [her] status." *See Smith,* 384 F.3d at 1294. Conti argues that, because her command's procedural violations prevented her from meeting promotion-eligibility requirements and from advancing in her career, she has a clear-cut legal entitlement to promotion. [ECF 35] at 30. However, alleging that she would be promotion *eligible*, but for the procedural violations, falls far short of demonstrating that although she has satisfied the legal requirements for a promotion, the military has refused to recognize her status. *See Smith*, 384 F.3d at 1294-95 (stating that plaintiff did not demonstrate that he "enjoyed a clear-cut legal right to promotion" but rather that "if he had been given the constructive credit to which he was entitled he would have been considered for promotion" earlier, and his chances of obtaining a promotion "would have been greater"). Accordingly, Conti has neither identified a workable standard by which the Court can assess whether the Air Force erred by not promoting her, nor has she shown a clear-cut entitlement to a promotion that the Air Force has failed to recognize.

IV.     CONCLUSION

Because the Court finds that Conti's claims are nonjusticiable, the government's motion to dismiss her complaint pursuant to RCFC 12(b)(6) is **GRANTED**. The parties' cross-motions for judgment on the administrative record are **DENIED AS MOOT.** The clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

                                                                s/ Thompson M. Dietz
                                                                THOMPSON M. DIETZ, Judge